UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DP WORLD LOGISTICS USA, INC., as successor-in-interest to UNIQUE LOGISTICS INTERNATIONAL (NYC) LLC,

Plaintiff,

Civil Action No.

v.

PERRY ELLIS INTERNATIONAL, INC., SUPREME INTERNATIONAL LLC,

Defendants.

## COMPLAINT

Plaintiff DP World Logistics USA, Inc., as successor-in-interest to Unique Logistics International (NYC) LLC, by and through its attorneys, for its Complaint against Defendants Perry Ellis International, Inc. and Supreme International LLC, alleges as follows:

## NATURE OF THE ACTION

1. This is an action to recover unpaid ocean freight and related logistics charges. Plaintiff DP World Logistics USA, Inc. ("DP World"), as successor-in-interest to Unique Logistics International (NYC) LLC ("Unique"), arranged and provided international ocean freight forwarding and related transportation services for Perry Ellis International, Inc. and its subsidiaries over a period of years pursuant to Unique's written Terms and Conditions of Service. Defendants accepted those services, were invoiced for them, and have refused to pay a balance of $118,469.86. Perry Ellis has acknowledged receiving and processing the great majority of the unpaid invoices and is apparently withholding payment on them as a unilateral setoff against a disputed damage claim arising from a single 2025 shipment. The governing Terms and Conditions expressly

prohibit any such setoff, exclude the category of damages Defendants claim, cap any liability of Unique at a small fraction of the sums withheld, and entitle DP World to contractual interest at 1.5% per month together with its attorneys' fees and costs of collection.

**THE PARTIES**

2. Plaintiff DP World Logistics USA, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 5605 Carnegie Boulevard, Suite 200, Charlotte, North Carolina 28209. DP World is the successor-in-interest to Unique Logistics International (NYC) LLC.

3. Defendant Perry Ellis International, Inc. ("PEI") is a corporation organized under the laws of the State of Florida with its principal place of business at 3000 NW 107th Avenue, Miami, Florida 33172.

4. Defendant Supreme International LLC ("Supreme International") is a limited liability company organized under the laws of the State of Florida with its principal place of business at 3000 NW 107th Avenue, Miami, Florida 33172. Upon information and belief, Supreme International is a wholly owned subsidiary of PEI, and its sole member is PEI.

5. PEI and Supreme International are referred to collectively as "Defendants" or "Perry Ellis." Upon information and belief, PEI directs and controls the logistics, freight procurement, accounts payable, and vendor payment functions of Supreme International and of PEI's other subsidiaries, Supreme Munsingwear Canada Inc. ("Supreme Canada") and Perry Ellis México, S. de R.L. de C.V. ("Perry Ellis Mexico"), from its Miami headquarters.

6. Among other things, PEI's Director of Logistics communicated carrier and routing requirements to Unique on behalf of all Perry Ellis entities; PEI's Vice President of Logistics and Customs Compliance has been responsible for Perry Ellis's dealings with Unique concerning the

shipments, invoices, and asserted claim described below; PEI's Logistics Financial Manager and accounts-payable personnel received Unique's statements of account for Supreme International, Supreme Canada, and Perry Ellis Mexico, annotated them with PEI's payment decisions, and directed the approval of invoices for payment; and PEI has remitted payment, in its own name and on its own payment vouchers, on invoices Unique issued to Supreme Canada. PEI requested and accepted the services at issue on behalf of itself, Supreme International, Supreme Canada, and Perry Ellis Mexico, and is a "Customer" within the meaning of the Terms and Conditions with respect to every invoice at issue.

## JURISDICTION AND VENUE

7. This Court has original subject-matter jurisdiction over this action under 28 U.S.C. § 1333(1) because DP World's claims arise out of maritime contracts for the carriage of goods by sea and for the arrangement of ocean transportation, and the charges sued upon are ocean freight and charges incidental to ocean carriage. DP World designates its claims as admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

8. In the alternative, this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties. DP World is a citizen of Delaware and North Carolina. PEI is a citizen of Florida. Supreme International takes the citizenship of its sole member, PEI, and is therefore a citizen of Florida.

9. To the extent any invoice sued upon arises from services other than the carriage of goods by sea, this Court has supplemental jurisdiction over the claims relating to those invoices under 28 U.S.C. § 1367(a) because they form part of the same case or controversy, arise under the

same Terms and Conditions, and were rendered as part of the same course of dealing between the parties.

10. This Court has personal jurisdiction over each Defendant. Section 17 of the relevant Terms and Conditions provides that "Customer irrevocably consents to non-exclusive jurisdiction and venue for all proceedings related to disputes involving Customer and UNIQUE in the federal or state courts sitting in New York, USA," and that "Customer waives all defenses based on inconvenience of forum in all actions commenced in or transferred to the venues agreed to above." Each Defendant is a "Customer" within the meaning of the Terms and Conditions, and each Defendant has consented to the jurisdiction of this Court.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (b)(3) and pursuant to the forum-selection and consent-to-venue provisions of Section 17 of the Terms and Conditions, under which each Defendant irrevocably consented to venue in the federal courts sitting in New York and waived any objection based on inconvenience of forum.

## FACTUAL ALLEGATIONS

### *The Parties' Relationship and the Governing Terms and Conditions*

12. Unique is a licensed ocean transportation intermediary, non-vessel operating common carrier, and freight forwarder. For a period of years before the events described below, Unique arranged and provided international ocean freight forwarding, ocean carriage, customs, drayage, and related logistics services for Perry Ellis, moving apparel and related goods from origins in Asia, Africa, and elsewhere to destinations in the United States, Canada, and Mexico.

13. Upon information and belief, Perry Ellis's annual freight spend with Unique was several million dollars, and Perry Ellis was among Unique's larger customers.

14. All services Unique rendered to Perry Ellis were rendered subject to the Terms and Conditions of Service of Unique Logistics International (NYC) LLC (the "Terms and Conditions"). A true and correct copy of the Terms and Conditions is attached as **Exhibit A**.

15. The Terms and Conditions provide that "[b]y requesting or accepting goods or services from UNIQUE, the Customer agrees to the following terms and conditions of service." The Terms and Conditions define "Customer" to include "any Person for whom, for whose benefit, or at whose request, UNIQUE directly or indirectly renders services, including all of the Person's agents, contractors, and/or other representatives, including shippers, importers, exporters, notify parties, . . . consignees, . . . and other similar parties." Ex. A at ¶ 1.

16. Each Defendant requested and accepted services from Unique, received Unique's invoices, and paid Unique's invoices over an extended course of dealing. Unique's invoices and business correspondence gave notice that all transactions were governed by Unique's standard terms and conditions, which were available on request and on Unique's website. Each Defendant is a "Customer" bound by the Terms and Conditions.

17. Section 13 of the Terms and Conditions governs payment. It provides that "[a]ll amounts owed to UNIQUE must be paid in the lawful currency specified in UNIQUE'S invoices in immediately available funds, without abatement, counterclaim, set-off, recoupment, and free and clear of, and without any deduction or withholding for, any taxes, duties, confiscation, detention, or other matters." Ex. A at ¶ 13.

18. Section 13 further provides that "[i]f any amount is not paid when due, it shall accrue interest until paid at one and one-half percent (1.5%) per month (19.72% per annum)." Ex. A at ¶ 13.

19. Section 13 also provides that "Customer shall pay all costs, expenses and fees (including reasonable attorneys' fees) incurred by UNIQUE in connection with (a) the enforcement of payment or performance of any indebtedness or obligation of Customer . . . or (b) any dispute between UNIQUE and Customer or any other Person." Ex. A at ¶ 13.

20. Section 3 of the Terms and Conditions provides that "[u]nless UNIQUE otherwise agrees, UNIQUE has complete freedom in choosing the means, routes, and procedures to be followed in handling, transporting, . . . or otherwise dealing with the goods, and in choosing the third parties to perform these services," and that "[a]ll such third parties shall be considered as the agents of Customer." Ex. A at ¶ 3.

21. Section 7 of the Terms and Conditions limits Unique's liability. Among other things, it provides that Unique has no liability for loss, damage, expense, or delay absent proven negligence or other fault while the goods are in Unique's physical custody; that for services covered by a Transport Document, Unique's liability is limited to the monetary limits stated in that Transport Document; that Unique's maximum aggregate liability to Customer in any calendar year shall be no more than the lesser of $5,000, actual direct damages, or the aggregate service charges paid by Customer during the same period; and that Unique "shall in no event be liable for any indirect, incidental, consequential, punitive, statutory or special damages, including lost profits, income or opportunity, even if UNIQUE is on notice of the possibility of any such damages." Ex. A at ¶ 7(b), (c), (e), (f).

22. Section 8 of the Terms and Conditions requires that, with respect to any act or omission by Unique, Customer present a preliminary notice of claim within fourteen days and a formal written sworn proof of claim within one hundred eighty days of the incident giving rise to

the claim, and that any suit on a claim against Unique be commenced within one year. Failure to satisfy those requirements "is a complete defense to any suit or action by Customer." Ex. A at ¶ 8.

23. Section 16 of the Terms and Conditions provides that Unique is not liable for loss, damage, expense, delay, or nonperformance resulting in whole or in part from circumstances beyond its control, including "incidents or deteriorations to means of transportation" and "acts, breaches of contract, or omissions by Customer or any other Person who may have an interest in the goods." Ex. A at ¶ 16.

24. Section 17 of the Terms and Conditions provides that the Terms and Conditions "shall be construed according to the Laws of the State of New York, USA, without regard to conflict of law principles." Ex. A at ¶ 17.

**The Unpaid Invoices**

25. Between approximately June 2024 and November 2025, Unique arranged and performed ocean freight forwarding, ocean carriage, and related services for Perry Ellis on numerous shipments, and issued invoices for those services, at PEI's direction and for PEI's benefit, to Supreme International, Supreme Canada, and Perry Ellis Mexico. PEI received, reviewed, approved, and paid or withheld payment on all of those invoices through its centralized logistics and accounts-payable functions in Miami.

26. Unique performed, arranged for the performance of, or caused to be performed all services for which it invoiced Perry Ellis. The goods covered by the invoices at issue were carried and delivered, and Perry Ellis accepted the services and the goods without rejection.

27. Invoices to Supreme International and Supreme Canada were due thirty days from the invoice date, and invoices to Perry Ellis Mexico were due on issuance, in each case as stated

on the face of the invoice and on Unique's statements of account, with credit extended at Unique's discretion under ¶ 9. Perry Ellis received each invoice and did not timely object to it.

28. As of April 2026, the unpaid balance on the invoices Unique issued to Perry Ellis totaled $180,745.73, consisting of $111,840.92 on invoices issued to Supreme International, $63,065.52 on invoices issued to Supreme Canada, and $5,839.29 on invoices issued to Perry Ellis Mexico.

29. Upon information and belief, Perry Ellis approved some of the invoices at issue for payment in its own accounts-payable system, confirming that the services were rendered and that the charges were correct, but withheld payment on them.

30. Between July and September 2026, after DP World demanded payment through counsel, Perry Ellis made partial payments on account of the invoices at issue, including a payment of $19,691.88 remitted by PEI on or about July 2, 2026, further payments received on or about July 6, 2026, a payment of $5,320.00 received on or about August 28, 2026, and a payment of $1,400.00 received on or about September 2, 2026.

31. After application of all payments and credits, a balance of $118,469.86 remains due and owing as of September 11, 2026, consisting of $85,100.92 on invoices issued to Supreme International, $28,775.14 on invoices issued to Supreme Canada, and $4,593.80 on invoices issued to Perry Ellis Mexico. Perry Ellis has made no further payment.

32. Of the $118,469.86 balance, $99,478.86 consists of invoices that Perry Ellis has acknowledged receiving and processing, has never contended were billed incorrectly, and has nonetheless refused to pay. Those invoices relate to shipments from Vietnam, Kenya, Bangladesh, Myanmar, China, and Indonesia to the United States, Canada, and Mexico, invoiced between July and November 2025. None of them is an invoice for the summer 2025 shipment from Durban,

South Africa that forms the basis of the alleged damage claim described below. Perry Ellis has advised Unique's accounts receivable personnel that it will not pay those invoices because of alleged operational failures by Unique, which, upon information and belief, refers to that asserted damage claim. The remaining $18,991.00 consists of three invoices as to which Perry Ellis has advised Unique's accounts receivable personnel that it believes Unique billed rates higher than those quoted.

33. The three invoices Perry Ellis disputes on rate grounds were billed at the rates applicable to the services actually performed on those shipments. In any event, Perry Ellis's contention (which is not true) that three invoices totaling $18,991.00 were overbilled provides no basis for withholding payment of the remaining $99,478.86, which Perry Ellis has never contended was billed incorrectly.

**Perry Ellis's Asserted Setoff**

34. The invoices on which Perry Ellis is withholding payment are not invoices for the Durban shipment. They are invoices for unrelated shipments on other trade lanes, issued to three different Perry Ellis entities, that were owed when Perry Ellis decided to withhold payment. Rather than pursue its asserted claim in the manner the Terms and Conditions require, Perry Ellis has applied this alleged damage figure across the accounts of Supreme International, Supreme Canada, and Perry Ellis Mexico, withholding $85,100.92 of Supreme International invoices, approximately $13,850 of Supreme Canada invoices, and one Perry Ellis Mexico invoice of $527.80.

35. Upon information and belief, Perry Ellis is withholding payment of the invoices at issue as a self-help setoff against a damage claim it asserts against Unique arising from the summer 2025 shipment. The $99,478.86 in invoices that it has refused to pay closely approximates $99,306 in direct delivery costs Perry Ellis claimed in connection with that shipment.

36. That shipment consisted of nineteen containers of goods that Perry Ellis booked, through its booking agent, for ocean carriage from Durban, South Africa, to Charleston, South Carolina, on a Maersk-operated service in or about June 2025, under a bill of lading issued by Unique's overseas agent, Unique Logistics International (H.K.) Ltd. Perry Ellis's booking agent selected and approved the vessel and carrier for that shipment.

37. After the goods were loaded, the ocean carrier unilaterally changed its vessel plan to omit the Charleston port and discharged the containers in Freeport, Bahamas. The carrier did not issue a diversion notice to Unique and continued to issue arrival notices reflecting Charleston as the port of discharge as late as June 24, 2025.

38. Upon learning of the omission of the Charleston port, Unique immediately submitted change-of-destination requests to the carrier, coordinated daily with the carrier and with Perry Ellis, arranged for the containers to be re-booked to Norfolk, Virginia, and, after a further carrier manifest error, arranged for the containers to be released and picked up. All nineteen containers were delivered by August 4, 2025.

39. By letter dated July 23, 2025 to Unique, Perry Ellis asserted a claim against Unique for $168,708.00, consisting of $69,402.00 in claimed incremental costs of drayage from Newark, New Jersey, and $99,306.00 in claimed costs of direct-to-store delivery of the goods to Walmart retail locations by FedEx. Perry Ellis contended that Unique had disregarded an April 10, 2025 instruction not to use Maersk for shipments from Durban and had failed to configure diversion alerts in the carrier's system.

40. The April 10, 2025 communication on which PEI relies advised Unique that Maersk's service from Africa would be discontinued on October 1, 2025, and asked Unique to review alternative carriers going forward. It did not, however, contain an instruction that Unique

cease booking Maersk before that date, and Perry Ellis's own booking agent thereafter accepted Maersk's rates and approved the bookings at issue on the Maersk-operated service with knowledge of the carrier.

41. By letter dated August 15, 2025, Unique responded to Perry Ellis's July 23, 2025 letter in detail, disputed the asserted failures, declined to accept financial liability for the carrier's port omission, and offered goodwill consideration on future bookings. On information and belief, Perry Ellis did not respond to that letter.

42. Perry Ellis has not presented Unique with a formal written sworn proof of claim as required by Section 8 of the Terms and Conditions and has not commenced any action against Unique or DP World on its asserted claim.

43. The damages Perry Ellis asserts, consisting of incremental inland trucking costs and expedited last-mile delivery costs, include categories of indirect, incidental, consequential, and special damages that Section 7(f) of the Terms and Conditions expressly excludes. Even if Perry Ellis had a viable claim, which it does not, Section 7(e) caps Unique's aggregate liability in any calendar year at no more than $5,000.

44. Whatever the merits of Perry Ellis's asserted claim, Section 13 of the Terms and Conditions required Perry Ellis to pay Unique's invoices "without abatement, counterclaim, set-off, [or] recoupment." Perry Ellis's withholding of $99,478.86 in freight charges on unrelated shipments on account of that claim is in and of itself a breach and its refusal to pay the remaining $18,991.00 pending a re-billing to which it is not entitled is a further breach.

## Demand and Refusal

45. By letters dated June 11, 2026 and August 13, 2026, DP World, through counsel, demanded payment of the outstanding balance and advised Perry Ellis that its withholding of payment as a setoff was prohibited by the Terms and Conditions.

46. Perry Ellis did not pay in response to either demand. Perry Ellis continues to withhold payment of the acknowledged invoices on account of its asserted damage claim and has declined to pay the three remaining invoices on the ground that it disagrees with the rates billed.

47. Unique performed all obligations required of it under the Terms and Conditions with respect to the invoices at issue, DP World has satisfied all obligations applicable to it as successor-in-interest, and all conditions precedent to Perry Ellis's payment obligation have been performed, have occurred, or have been waived.

48. Despite demand, Perry Ellis has failed and refused to pay the balance of $118,469.86.

## COUNT I: BREACH OF CONTRACT

49. DP World incorporates by reference the allegations of the preceding paragraphs as if fully set forth in this Count.

50. The Terms and Conditions, to which each Defendant assented by requesting and accepting Unique's services, together with the invoices issued under them, constitute valid and binding maritime contracts between Unique, to whose rights DP World has succeeded, and each Defendant.

51. Unique performed its obligations under those contracts by arranging and providing the ocean freight forwarding, carriage, and related services reflected in the invoices at issue.

52. Supreme International breached those contracts by failing and refusing to pay the invoices issued to it when due, and by withholding payment as a setoff, counterclaim, or recoupment in direct violation of Section 13 of the Terms and Conditions.

53. PEI is liable for every invoice at issue, including the invoices issued to Supreme International, Supreme Canada, and Perry Ellis Mexico, because PEI requested the services on behalf of each of those entities and for its own benefit, is itself a "Customer" under Section 1 of the Terms and Conditions, received and processed each invoice through its own accounts-payable function, directed and controlled the withholding of payment on each invoice, and has remitted payment in its own name on invoices issued to its subsidiaries. PEI breached the Terms and Conditions by failing and refusing to pay those invoices when due and by withholding payment as a setoff.

54. As a direct and proximate result of Defendants' breaches, DP World has been damaged in the principal amount of at least $118,469.86, of which $85,100.92 is attributable to invoices issued to Supreme International, together with contractual interest at 1.5% per month from the due date of each invoice until paid, and the reasonable attorneys' fees, costs, and expenses DP World has incurred and will incur in enforcing payment, all as provided in Section 13 of the Terms and Conditions.

**COUNT II: ACCOUNT STATED**

55. DP World incorporates by reference the allegations of the preceding paragraphs as if fully set forth in this Count.

56. Unique delivered invoices and statements of account to Supreme International, Supreme Canada, and Perry Ellis Mexico setting forth the services performed and the charges due

for each shipment at issue, and delivered those invoices and statements to PEI's logistics and accounts-payable personnel, who managed payment on behalf of each of those entities.

57. Supreme International received and retained the invoices and statements of account directed to it without objecting to the accuracy of the charges within a reasonable time. PEI received and retained the invoices and statements of account for Supreme International, Supreme Canada, and Perry Ellis Mexico, approved the great majority of the invoices for payment in its accounts-payable system, annotated the statements of account as "Received, in process," and remitted partial payments on account of them, without objecting to the accuracy of the charges within a reasonable time except as to the three invoices identified above.

58. By their conduct, Defendants acknowledged the correctness of the account and impliedly promised to pay the balance stated.

59. The unpaid balance on the accounts stated is $118,469.86, of which $85,100.92 is attributable to invoices issued to Supreme International, and that balance remains due despite demand.

**COUNT III: UNJUST ENRICHMENT AND QUANTUM MERUIT**
**(In the Alternative)**

60. DP World incorporates by reference the allegations of the preceding paragraphs as if fully set forth in this Count.

61. This Count is pleaded in the alternative to Counts I and II, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure, in the event the Court determines that any Defendant is not bound by the Terms and Conditions or that the parties' contract does not govern any portion of the charges at issue.

62. Unique, at Defendants' request and for their benefit, arranged and provided ocean freight forwarding, carriage, and related services having a reasonable value equal to the amounts invoiced, of which at least $118,469.86 remains unpaid.

63. Defendants accepted and received the benefit of those services, including the transportation and delivery of their goods, with knowledge that Unique expected to be paid for them.

64. Defendants have retained the benefit of those services without paying for them, and equity and good conscience require that Defendants pay DP World the reasonable value of the services rendered.

**PRAYER FOR RELIEF**

WHEREFORE, DP World requests that this Court enter judgment in its favor and against PEI and against Supreme International, jointly and severally, plus reasonable attorneys' fees, costs, and expenses pursuant to Section 13 of the Terms and Conditions, and such other and further relief as the Court deems just and proper.

Dated: October 22, 2026

Respectfully submitted,

GOLDBERG SEGALLA LLP

*s/ Ashlyn M. Capote*
By:______________________
Ashlyn M. Capote
*Attorneys for Plaintiff*
665 Main Street
Buffalo, New York 14203
Tel: (716) 566-5400
acapote@goldbergsegalla.com

Mark C. Vanneste (pro hac vice forthcoming)
Howard & Howard Attorneys PLLC

450 West Fourth Street
Royal Oak, MI 48067-2557
(248) 645-1483
mv@h2law.com

*Attorneys for Plaintiff*